# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

Toni L. Smith,

      Plaintiff,

v.                                                                               Case No. 09-2153-JWL

**Unified Government of**
**Wyandotte County/Kansas City,**
**Kansas,**

      Defendant.

## MEMORANDUM & ORDER

Plaintiff filed suit against her current employer, the Unified Government of Wyandotte County/Kansas City, Kansas, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Kansas Act Against Discrimination, K.S.A. § 44-1001 et seq. This matter is presently before the court on defendant's motion for summary judgment on all claims (doc. 40). As will be explained, the motion is granted in its entirety.[1]

## I.    Facts

The following facts are uncontroverted or related in the light most favorable to plaintiff,

---

[1] Plaintiff did not file a timely response to the motion for summary judgment, prompting the court to order plaintiff to show good cause why she had not responded to the motion in a timely fashion and why, at the time of the court's order, she still had not filed a response. Plaintiff filed a timely response to the order to show cause, explaining that a miscommunication occurred between plaintiff's co-counsel such that each thought the other would file the response. Plaintiff then filed a substantive response to the motion for summary judgment and, in the interests of justice, the court will resolve the motion for summary judgment on the merits.

the nonmoving party. Plaintiff Toni L. Smith, an African-American female, has been employed by defendant Unified Government of Wyandotte County/Kansas City, Kansas since 1990 as a parking control officer and she retains that position today. During the relevant time period, the Parking Control Department was part of the Kansas City, Kansas police department. Plaintiff's immediate supervisor during the relevant time period–and still today–is Broderick Henderson, the Parking Control Field Supervisor. Mr. Henderson is a member of the Kansas House of Representatives and when he is on leave to perform his legislative duties, Anthony McDaniel assumes the position of interim field supervisor and acts as plaintiff's immediate supervisor.

Beginning in April 2007, Sergeant Emmett Lockridge became the Parking Control Supervisor and he supervised Mr. Henderson (and, periodically, Mr. McDaniel) and the administrative staff of the parking control department. In June 2007, plaintiff made an internal complaint that Sergeant Lockridge had made unwanted sexual advances toward her and had made lewd comments and gestures toward her. The department conducted an internal investigation and, in July 2007, concluded that Sergeant Lockridge's conduct was inappropriate but did not meet the department's definition of "sexual harassment." In any event, the department advised plaintiff that appropriate discipline and remedial training would be provided to Sergeant Lockridge. Plaintiff testified in her deposition that she was not subjected to any sexual harassment of any kind after July 2007. On November 2, 2007, plaintiff filed a charge of discrimination with the EEOC alleging that she had been sexually harassed by Sergeant Lockridge.

After plaintiff filed her charge of discrimination, more than six months passed without

any change in plaintiff's employment status and without much incident whatsoever.[2]  On May 12, 2008, a citizen complained that plaintiff had been rude to her and had used profanity.  On May 20, 2008, Mr. McDaniel issued plaintiff a Counseling Form based on the citizen's complaint and because the department had received two similar complaints about plaintiff in the past year.  The form advised plaintiff that the infraction was a "minor" violation of the department's rules and regulations, that no other discipline would issue (other than the Counseling Form itself), and that the violation would remain "active" in her personnel file for one year.

In that regard, the evidence in the record demonstrates that, pursuant to defendant's Memorandum of Agreement with AFSCME, a public employees' union to which plaintiff belongs, disciplinary actions shall be removed from the employee's personnel file, upon the employee's request, after one year if no further rule violations occur within that one-year period or, if the employee has received a suspension, after 18 months if no further rule violations occur within that 18-month period.  In fact, the pertinent language in the Memorandum of Agreement states that the employee's "record will be cleared" after the requisite one-year or 18-month period.

---

[2]Plaintiff testified in her deposition that, after she filed her charge of discrimination, she was "getting wrote up every time [she] turned around."  When pressed, the only specific incident she could recall occurring from the time she filed her charge in November 2007 until May 2008 was a time when she accidentally pushed the emergency button on her radio and "may have been" counseled for it.  She further testified that Mr. McDaniel began following her around during her shift.  There is no evidence in the record suggesting that any other incidents pertinent to plaintiff's employment as it relates to her lawsuit occurred during this six-month period.

3

After the May 2008 Counseling Form, the record reveals another six-month lull in activity until December 2008.[3] During that month, plaintiff received two Letters of Discipline. The first Letter of Discipline was issued on December 9, 2008 after an administrative support assistant was placing payroll checks into employees' file drawers and found a note in plaintiff's drawer that read, "What you looking for assholes?" The Letter of Discipline was issued for plaintiff's violation of the department's rule mandating respect for supervisors and other employees and prohibiting the use of abusive or insulting language to another employee. In the Letter of Discipline, Mr. Henderson noted that the violation was deemed a "minor" violation and that the "imposed discipline shall consist of 20 points" on plaintiff's record. Mr. Henderson further explained that the total points assessed "for all active minor violations will be kept in your personnel file for one (1) year" and that if "at any time the total points assessed for a minor violation causes the accumulated total points for all active minor violations to exceed forty (40) points, that violation shall be considered a major violation."

Plaintiff's second Letter of Discipline was issued by Mr. Henderson on December 15, 2008 based on Mr. McDaniel's apparent belief that plaintiff had combined her lunch break with her rest breaks without the requisite approval. In the Letter, Mr. Henderson explained that the imposed discipline for the violation was 20 points and, because the violation brought her

---

[3]Plaintiff testified that she was written up "so many times" between May 2008 and December 2008 that she could not remember any specific disciplinary action because it was simply "too much." When pressed to recollect a specific disciplinary action taken against her during this six-month period, plaintiff testified that she could not recall any "right away." The record does not contain any additional evidence that plaintiff was disciplined in any way between the May 20, 2008 counseling and December 2008.

4

accumulated point total to 40 points, the violation was deemed a "major" violation warranting a two-day suspension. Plaintiff filed a grievance and, as a result, defendant rescinded the suspension and paid plaintiff full back pay for the two days she was suspended.

On December 17, 2008, plaintiff filed a charge of discrimination with the EEOC alleging discrimination on the basis of her race and sex as well as retaliation.[4] The text of her charge states in full as follows:

> Since May 2008 and continuing to on or about December 15, 2008, I have been harassed and disciplined. On May 20, 2008, I received a counseling. On December 9, 2008, I was written up for a minor violation. On December 15, 2008 I was written up and suspended. My current position is Parking Control Officer and I have been employed since 1990.
>
> In May 2008, management indicated I was counseled for inappropriate conduct. On December 9, 2008, management indicated I had violated Section 2.29, Respect for Supervisor and other Employees. On December 15, 2008, management advised that I was written up and suspended for taking excessive time for a meal and for combining a rest break in conjunction with my lunch break.
>
> I believe that I have been harassed and disciplined because of my sex, female, race, black, and in retaliation for filing [the EEOC charge concerning Sergeant Lockridge] in violation of Title VII of the Civil Rights Act of 1964, as amended.[5]

In her deposition, plaintiff testified that, at some point "long after" her December 2008 charge, she was suspended for three or four days by Mr. McDaniel based on his apparent belief that she

---

[4] In May 2009, plaintiff filed a complaint with the Kansas Human Rights Commission. The substance of this complaint is the same as plaintiff's December 2008 EEOC charge of discrimination.

[5] Plaintiff clarified in her deposition that the "harassment" referenced in her charge of discrimination does not refer to sexual harassment of any kind but only to the allegedly constant discipline to which defendant subjected her.

5

had left the district during her shift without authorization. The evidence does not reflect any other specific instances of discipline relating to plaintiff's employment after December 2008 and, as noted earlier, plaintiff remains employed with defendant as a Parking Control Officer.

Additional facts will be related, as necessary, in connection with the court's analysis of defendant's motion and plaintiff's particular claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather,

the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. *Id.* (citing Fed. R. Civ. P. 56(e)). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III. Plaintiff's Discrimination Claims

In the pretrial order, plaintiff alleges that defendant discriminated against her on the basis of her sex and race.[6] In its motion for summary judgment, defendant contends that summary judgment is warranted on these claims because plaintiff has not suffered an adverse employment

---

[6]Plaintiff also states in the pretrial order that she was "harassed" on the basis of her sex and race. As clarified by plaintiff in her deposition, however, plaintiff's use of the term "harassed" does not refer to sexual or racial harassment in the sense that she was subjected to unwelcome advances or a hostile work environment but that she was allegedly subjected to repeated disciplinary actions based on her sex and race. The court, then, discerns no hostile work environment here and the pretrial order does not otherwise suggest such a claim.

7

action in any respect and, thus, cannot establish a prima facie case of discrimination. *See Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009) (under *McDonnell Douglas* framework, plaintiff bears initial burden of establishing a prima facie case of discrimination, which includes a showing that she suffered an adverse employment action).[7] In her summary judgment submissions, plaintiff contends that she suffered three specific adverse actions as a result of her sex and race–the May 20, 2008 Counseling Form; the December 9, 2008 Letter of Discipline; and the December 15, 2008 Letter of Discipline.[8] Defendant moves for summary judgment on these claims on the grounds that neither the counseling form nor the letters of discipline (including the rescinded two-day suspension) constitute "adverse employment actions" within the meaning of the Tenth Circuit's discrimination jurisprudence. As explained below, the uncontroverted evidence demonstrates that none of the discipline imposed on plaintiff rises to the level of an adverse employment action. Summary judgment in favor of defendant, then, is granted on these claims.

The court begins its analysis with the two-day suspension that plaintiff received in

---

[7]Although the court references only plaintiff's Title VII claims in the text of this opinion, the opinion applies with full force to plaintiff's KAAD claims as well. *See Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1166 n.7 (10th Cir. 2007).

[8]Plaintiff identified two other specific disciplinary actions in her deposition–a "recent" three- or four-day suspension and a counseling when she accidentally pushed the emergency button on her radio. Plaintiff does not mention these instances in her briefing, but to the extent she means to pursue a disparate treatment or retaliation claim based on these events, those claims are dismissed for lack of subject matter jurisdiction as it is undisputed that these events were never the subject of a charge of discrimination. *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (each discrete incident of alleged retaliation constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted).

connection with her second Letter of Discipline in December 2008. Defendant contends that the suspension cannot constitute an adverse employment action for purposes of establishing the requisite prima facie case of discrimination because the suspension was rescinded promptly and plaintiff received full back pay for the two days she was suspended. *See Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) ("adverse employment action" includes a "significant change in employment status," such as hiring, firing or a decision causing a significant change in benefits). Significantly, plaintiff does not challenge, in her response, defendant's argument that the rescinded suspension does not constitute an adverse employment action. Indeed, the argument portion of her brief does not mention the suspension in any respect, but focuses solely on the written warnings (and the points assessed against plaintiff) and the circumstances under which written warnings are deemed adverse employment actions. It appears, then, that plaintiff has abandoned any claim arising out of the rescinded suspension. *See Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005) (plaintiffs abandoned claims "as evidenced by their failure to seriously address them in their briefs").

In any event, the court would grant on the merits defendant's motion for summary judgment with respect to plaintiff's discriminatory suspension claims on the grounds that the rescinded suspension, under the specific facts of this case, does not constitute an adverse employment action. The court recognizes that the Tenth Circuit, in 1998, stated that "[a]ctions such as suspensions or terminations are by their nature adverse, even if subsequently withdrawn." *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998). It is unclear from the *Roberts* opinion, however, whether the plaintiff received full back pay when he was

9

reinstated after his termination and there are no facts in the opinion suggesting that the plaintiff's two suspensions were ever rescinded. The court, then, finds *Roberts* distinguishable. Moreover, in a more recent decision, the Circuit has deemed "correct" a district court's statement that "an employer's decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1151 n.7 (10th Cir. 2005). In *Orr*, the Circuit suggested that a rescinded action might not be deemed adverse if the employee was made whole in connection with the rescission. *See id.* ("Defendants have not demonstrated how this [rescinded action] mooted all of [plaintiff's] concerns.").

Indeed, other courts have recognized that when an employer promptly rescinds a potentially unlawful employment action and makes the plaintiff whole in doing so, the action should not be deemed adverse. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (change in reporting structure that was rescinded the following day did not rise to the level of an adverse employment action); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267-68 (11th Cir. 2001) (when action is rescinded and backpay is awarded, action is not adverse). As explained by the Eighth Circuit in the context of examining an employment action that the employer rescinded during the grievance process,

> [W]e do not find that rescinding a prior employment action will *always* shield an employer from liability. Such a broad rule would permit employers to escape Title VII liability merely by correcting their discriminatory acts after a significant amount of time has passed or only when litigation has been threatened. However, holding that corrective action *never* protects an employer from liability might create equally perverse incentives. If we allow Jackson's claim to proceed in the present case, we would undermine UPS's formal grievance process. Indeed, if

> an employer could be sued for discrimination even after promptly correcting an
> alleged wrong, there would be little incentive for 'the kind of extrajudicial
> corrective action envisioned by Congress when it passed Title VII.' Therefore,
> because UPS promptly reinstated Jackson with full back pay and seniority, its
> initial disqualification decision was not an adverse employment action.

*Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1142 (8th Cir. 2008) (citations omitted).

Ultimately, the court believes that the Tenth Circuit, if faced with the particular facts of this case, would find that plaintiff's two-day suspension does not constitute an adverse employment action for purposes of the Circuit's Title VII discrimination jurisprudence. It is undisputed that the suspension was rescinded promptly when plaintiff filed her grievance and that she received full back pay for the suspension and there is no evidence or suggestion that plaintiff suffered any particularized emotional distress as a result of the initial suspension decision. Thus, even if plaintiff had not abandoned her discriminatory suspension claims, the court would grant summary judgment in favor of defendant on these claims.

The court turns, then, to the Counseling Form and Letters of Discipline received by plaintiff. In the Tenth Circuit, "a written warning is an adverse employment action '*only* if it effects a significant change in the plaintiff's employment status' by, for example, 'affecting the likelihood that the plaintiff will be terminated, undermining the plaintiff's current position, or affecting the plaintiff's future employment opportunities.'" *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007) (quoting *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006); *Medina v. Income Support Div., State of New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005)). There is no evidence in the record from which the jury could conclude that the three written warnings received by plaintiff–either individually or in sum–effected a

significant change in her employment status. Despite receiving the warnings, plaintiff continues her employment with defendant today in the same position that she has held since 1990. Under the express terms of defendant's Memorandum of Agreement with the AFSCME, it appears that sufficient time has passed such that these warnings have been removed from plaintiff's personnel file and that her record has been cleared entirely.[9] Certainly, there is no evidence in the record suggesting that any of these warnings presently places at risk plaintiff's continued employment or that the warnings have had any negative impact on her employment whatsoever. In the absence of any evidence that the disciplinary warnings issued by defendant adversely affected the terms and conditions of plaintiff's employment in any respect, summary judgment is granted on plaintiff's discrimination claims.

## IV.  Plaintiff's Retaliation Claims

Plaintiff also asserts in the pretrial order that she received the Counseling Form and the two Letters of Discipline in retaliation for her filing her November 2007 charge of discrimination. To establish a prima facie case of retaliation under Title VII, plaintiff must establish three elements: (1) she engaged in protected opposition to discrimination; (2) she

---

[9]Plaintiff disputes the fact that the warnings have been removed from her personnel file and her record cleared solely on the grounds that defendant produced copies of the warnings during discovery which, according to plaintiff, can mean only that the warnings are still maintained in her personnel file. The court disagrees. Once plaintiff filed her charge of discrimination in December 2008, defendant was required under Title VII to retain all relevant personnel records until the termination of this litigation. *See* 29 C.F.R. § 1602.14. Defendant's retention of the documents, then, simply evidences appropriate recordkeeping practices under Title VII.

12

suffered an adverse action that a reasonable employee would have found material; and (3) a causal connection exists between the protected activity and the materially adverse action. *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1215 (10th Cir. 2010). In support of its motion for summary judgment, defendant contends that plaintiffs cannot establish the second or third elements necessary for her prima facie case. As will be explained, because plaintiff has not come forward with sufficient evidence from which a reasonable jury could find a causal connection between her protected activity and any of the disciplinary actions taken against her, the court grants summary judgment in favor of defendant on plaintiff's retaliation claims and declines to address whether those disciplinary actions are "materially adverse" under the Circuit's Title VII retaliation jurisprudence.

Plaintiff may establish the requisite causal connection by "proffering evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). But unless "there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *Id.* at 1182. Defendant contends that plaintiff cannot establish the requisite causal connection because plaintiff's receipt of the Counseling Form six months after the filing of her charge and her receipt of the Letters of Discipline more than one year after the filing of her charge are too temporally remote to support an inference of causation and there is no additional evidence in the record supporting such an inference.

The court agrees that under Tenth Circuit precedent the six-month and one-year gaps

13

between plaintiff's protected activity and defendant's disciplinary actions cannot, standing alone, support an inference of causation. *See id.* (nine-month gap between protected activity and adverse action insufficient to support inference of causation); *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (three-month period, standing alone, is insufficient to establish causation). Plaintiff contends that the evidence reflects that additional retaliatory activity was occurring during the six-month and one-year gaps such that defendant's temporal proximity argument is "too simplistic." But plaintiff offers no specific facts concerning any allegedly retaliatory activity occurring during these long gaps of time. She simply points to her deposition testimony to the effect that "there have been so many write-ups" she cannot possibly remember them. Such evidence is not sufficient to constitute "specific facts showing there is a genuine issue for trial as to the essential elements" of her claim. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). Plaintiff also urges the court to disregard Tenth Circuit case law establishing that a six-month gap cannot support an inference of causation and to follow district court cases outside this Circuit that have found six-month gaps sufficient to establish causation. The court declines this invitation.

While plaintiff has not responded to defendant's argument that no additional evidence in the record supports an inference of causation, the court, in an abundance of caution, has reviewed the record thoroughly for evidence of defendant's retaliatory motive. It has found none. Plaintiff's November 2007 charge of discrimination focused primarily on the conduct of Sergeant Lockridge and there is no evidence that Sergeant Lockridge was involved in any of the decisions to discipline plaintiff. Although plaintiff testified that she heard that Sergeant

14

Lockridge had a meeting with certain subordinates after plaintiff either made her internal complaint of sexual harassment or filed her charge and, during the meeting, asked those in attendance "whose side" they were on, plaintiff's testimony on this issue constitutes inadmissible hearsay. Plaintiff also contends that Sergeant Lockridge testified that he was advised by his superior that Mr. Henderson had been treating plaintiff differently since plaintiff's complaint of discrimination. But a careful review of the record reveals that Sergeant Lockridge was advised about an allegation made by plaintiff that Mr. Henderson had been treating her differently–not any finding on the part of defendant that Mr. Henderson had in fact treated her differently. While there is some evidence in the record that Mr. Henderson perhaps doubted the merits of plaintiff's sexual harassment complaint in light of plaintiff's alleged history of dating numerous people within the department, that evidence is insufficient to establish an inference of causation particularly when Mr. Henderson did not take any disciplinary action against plaintiff for more than one year after her charge of discrimination and more than 18 months after her internal complaint.

Because the record, even when considered in the light most favorable to plaintiff, does not contain sufficient evidence establishing a causal connection between plaintiff's protected activity and any adverse actions taken against her, summary judgment in favor of defendant is appropriate on plaintiff's retaliation claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 40) is **granted** in its entirety.

**IT IS SO ORDERED.**

Dated this 10th day of June, 2010, at Kansas City, Kansas.

                                            s/ John W. Lungstrum
                                            John W. Lungstrum
                                            United States District Judge